*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0296P (6th Cir.)
File Name: 03a0296p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID MAPLES,
    *Petitioner-Appellant,*

v.

JIMMY STEGALL,
    *Respondent-Appellee.*

No. 01-2727

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-71718—Victoria A. Roberts, District Judge.

Submitted: June 18, 2003

Decided and Filed: August 19, 2003

Before: BOGGS and GILMAN, Circuit Judges;
MARBLEY, District Judge.[*]

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

_____

### COUNSEL

**ON BRIEF:** Brad H. Beaver, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS DIVISION, Lansing, Michigan, for Appellee. David A. Maples, New Haven, Michigan, pro se.

GILMAN, J., delivered the opinion of the court, in which MARBLEY, D. J., joined. BOGGS, J. (p. 15), delivered a separate opinion concurring in part and dissenting in part.

_____

### OPINION

_____

RONALD LEE GILMAN, Circuit Judge. David Maples pled guilty in Michigan state court to one count of distributing cocaine. He did so only after receiving assurances from his attorney that he would subsequently be able to appeal an alleged violation of his speedy-trial rights. That advice turned out to be erroneous. The Michigan Court of Appeals held on direct appeal that Maples's plea agreement clearly precluded him from subsequently raising this issue.

After the Michigan court system denied him any relief, either on direct appeal or in post-conviction proceedings, Maples filed a petition for habeas corpus in the district court below. He raised, among other alleged errors, an ineffective-assistance-of-counsel claim. The district court denied the petition, but granted Maples a certificate of appealability solely with respect to the issue of ineffective assistance of counsel. For the reasons set forth below, we **VACATE** the judgment of the district court and **REMAND** the case with directions that the court assess the merits of Maples's speedy-trial argument as part of his ineffective-assistance-of-counsel claim.

## I. BACKGROUND

Maples was charged in Michigan state court with delivery of more than 50 grams of cocaine and with being part of a conspiracy to so deliver, in violation of Michigan state law. He filed motions to dismiss the charges on the grounds that he was entrapped and that the state's 180-day speedy-trial rule was violated. The court denied both motions.

On the day scheduled for trial, Maples entered into a plea agreement, pursuant to which he pled guilty to the delivery charge and the state moved to dismiss the conspiracy charge. At the plea colloquy, the following exchange transpired between Daniel Feinberg, Maples's trial counsel, James Sullivan, the Assistant District Attorney, and the court:

> Feinberg: Also, your honor, I believe since it is a jurisdictional matter, this wouldn't affect [Maples's] rights preserved on appeal, 180 days and all that . . . .
>
> The Court: I am not going to make any comments on the 180-day rule. I can't remember whether it does or not. Do you recall?
>
> Sullivan: I am sure . . . I think he waived it.
>
> The Court: I can't comment on that. . . . I cannot tell you. You are going to have to advise your client in that regard on that; whether it is waived or not. I cannot make any comments on that. Frankly, I don't recall.

Maples subsequently accepted the plea agreement. He did so because his counsel advised him that the plea agreement would not preclude him from arguing on appeal that his speedy-trial rights were violated.

Maples appealed his conviction to the Michigan Court of Appeals, claiming that the trial court erred in denying his motion to dismiss, which was based in part upon the alleged violation of his right to a speedy trial. In an unpublished per

curiam opinion, the state appellate court affirmed the trial court's ruling. It held that "Defendant's unconditional guilty plea waives review of the claimed violation of the 180-day rule . . . and his claimed violation of his constitutional and statutory right to a speedy trial . . . ."

Proceeding pro se, Maples then filed an application for leave to appeal to the Michigan Supreme Court. He raised the same claims that he had raised before the Court of Appeals, as well as a claim that his trial counsel was constitutionally ineffective for failing to apprise Maples that he could not appeal the speedy-trial issue after accepting the guilty plea. The Michigan Supreme Court denied leave to appeal in a summary order.

Maples subsequently filed a motion for relief from judgment with the state trial court. He again raised the ineffective-assistance-of-counsel claim, and again the trial court denied relief. Maples then sought leave to appeal the trial court's ruling to the Michigan Court of Appeals, which denied the application on October 21, 1999.

Fifty-one days later, on December 11, 1999, Maples completed his application for leave to appeal to the Michigan Supreme Court. The application included a claim that his trial counsel was constitutionally ineffective. That day, Maples called the prison mailroom, per prison policy, to ascertain the cost of mailing his application. He was told to call back two days later.

On December 13, 1999, Maples was quoted the price to send his application. Although the record is unclear on this issue, it appears that Maples delivered his application to the prison mailroom either that day or the very next day, 53 or 54 days after the Michigan Court of Appeals denied leave to appeal.

The Michigan Supreme Court received Maples's application on December 17, 1999, 57 days after the Court of

Appeals issued its ruling. This was untimely under Michigan law, which requires that such an application "be filed [no] more than 56 days after the Court of Appeals decision." MCR 7.302(C)(3). The Michigan Supreme Court therefore returned the application without filing it due to the procedural default.

Maples then filed a petition for habeas corpus in the district court below. Among other claims raised in support of collateral relief, Maples contended that his counsel was constitutionally ineffective for misadvising him about his ability to raise the speedy-trial issue after pleading guilty. The district court denied the petition, holding in pertinent part as follows:

> Petitioner was represented by counsel at his plea, and he indicated that his plea was voluntary and intelligent. Although his attorney asserted that the plea did not waive Petitioner's right to raise his speedy trial claim on appeal, the trial court stated that it could not comment on that issue. The plea was not conditioned on Petitioner's right to appeal the speedy trial issue. Therefore, Petitioner's guilty plea forecloses habeas review of his speedy trial claim.

The district court did not explicitly rule on the ineffective-assistance-of-counsel claim. Maples filed a motion for a certificate of appealability on this issue. The district court granted a certificate as to "whether Maples received ineffective assistance of counsel when his attorney advised Maples that he could plead guilty and still raise a speedy trial claim on appeal."

## II. ANALYSIS

### A. Standard of review

"This court applies de novo review to the decision of the district court in a habeas corpus proceeding." *Harris v.*

*Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). Maples filed his federal habeas corpus petition after the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254(d). It provides in part that a federal court may grant a writ of habeas corpus with respect to a state-court judgment only where

> the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This statute by its own terms is applicable only to habeas claims that were "adjudicated on the merits in State court . . . ." *Id.* Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001) (applying pre-AEDPA standards to a habeas petition filed pursuant to § 2254 because "no state court reviewed the merits of [the] claim"). Instead, this court reviews questions of law and mixed questions of law and fact de novo. *Id.*

The case law in this circuit, however, has been less than consistent on this point, as indicated by the following statement:

> Several other circuits . . . found when a state court fails to address a petitioner's federal claim at all, the appellate court should apply the pre-AEDPA de novo standard of review. . . . Whether these courts' holdings are correct, however, is not for this panel to decide. In *Doan* [*v. Brigano*, 237 F.3d 722 (6th Cir. 2001)], the state court failed to mention, let alone adjudicate, the petitioner's

federal claim. However, the *Doan* court still applied the AEDPA standard in reviewing the petitioner's claim. Even if the *Doan* court did not explain its reasoning for adopting its position, this panel is still bound by its decision.

*Clifford v. Chandler*, 333 F.3d 724, 730 (6th Cir. 2003) (internal citations omitted). Normally, this would end our inquiry, and we would proceed to apply AEDPA, because "[a] panel of this court cannot overrule the decision of another panel." *Hinchman v. Moore*, 312 F.3d 198, 203 (6th Cir. 2002). Both *Clifford* and *Doan*, however, were abrogated by *Wiggins v. Smith*, –U.S. –, 123 S. Ct. 2527 (2003), a Supreme Court opinion that was issued the day after *Clifford*.

The *Wiggins* Court held that the petitioner was entitled to a writ of habeas corpus on the basis of his ineffective-assistance-of-counsel claim. *Id.* at 2544. It applied AEDPA's "unreasonable-application" test to the state court's ruling on the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984). *Wiggins*, 123 S. Ct. at 2538 ("The Court of Appeals' assumption that the investigation was adequate thus reflected an unreasonable application of *Strickland*.") (internal citation omitted). The *Wiggins* Court, however, noted that because no state court analyzed the petitioner's claim for prejudice—the second prong of *Strickland*—its "review [wa]s not circumscribed by a state court conclusion." *Id.* at 2542 ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."). The Court therefore did not assess whether the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," but rather conducted its review de novo. *Id.* at 2542-44. In light of this new Supreme Court precedent, we too must review Maples's ineffective-assistance-of-counsel claim de novo. *See Hinchman*, 312 F.3d at 203 ("[A] prior decision remains controlling authority unless an inconsistent decision

of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

**B.   Maples's ineffective-assistance-of-counsel claim**

The right to the effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000). A petitioner must satisfy a two-prong test to prevail on an ineffective-assistance-of-counsel claim. First, the petitioner must show that the performance of counsel fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In so doing, the petitioner must rebut the presumption that counsel's "challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). The second prong requires that the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**1.   Procedural default**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. § 2254(b)(1)). A habeas petitioner has not exhausted his claims in state court unless he has "properly presented" his claims to a state court of last resort. *Id.* at 848 (emphasis omitted). The state's sole argument in the present appeal is that because Maples failed to timely raise his ineffective-assistance-of-counsel claim before the Michigan Supreme Court, the federal courts are precluded from ruling on the merits of the claim.

This court will consider the merits of a procedurally defaulted claim in a habeas petition, however, where the

petitioner "show[s] that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003). A fuller explanation of this principle was set forth in *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (internal citations omitted), where the court stated:

> When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review. A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case.

The state contends that Maples has not shown cause for his procedural default. "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). One of this court's opinions that on the surface appears similar to the case at bar is *Shorter v. Ohio Department of Rehabilitation & Corrections*, 180 F.3d 723 (6th Cir. 1999). There, Shorter raised a claim in his habeas petition that was not reviewed by the Ohio Supreme Court because his opening brief was filed two days late. *Id.* at 724. Shorter argued that there was "cause" for the procedural default because he had been assured by the United States Postal Service that his brief would be delivered to the Ohio Supreme Court no later than the last day that it would have been accepted for filing. *Id.* at 725-26.

In rejecting Shorter's argument, this court held that cause had not been demonstrated by entrusting the brief to the Postal Service, since counsel could have hand-delivered the brief to the clerk of the Ohio Supreme Court himself. *Id.* at 726. The key difference between the present case and *Shorter* is that the petitioner in *Shorter* was represented by counsel, whereas Maples was not. *Shorter* summarized its reasoning as follows: "[P]etitioner's . . . counsel elected not to drive the brief to the Ohio Supreme Court . . . , but rather relied upon the U.S. Postal Service. If such reliance constitutes 'cause,' then arguably, there is no hope for the concept of finality." *Id.* Maples, on the other hand, was proceeding pro se and, because he was incarcerated, he did not have the opportunity to hand-deliver his brief to the Michigan Supreme Court.

A case that we find much more on point is *Mohn v. Bock*, 208 F. Supp. 2d 796 (E.D. Mich. 2002). In *Mohn*, as here, the habeas petitioner raised a claim that was not reviewed by the Michigan Supreme Court because it arrived one day after the 56-day filing deadline. *Id.* at 801. Pursuant to prison policy, Mohn had presented his brief to his prison unit manager five days prior to the deadline. *Id.* at 802. But the brief was apparently not sent out promptly, which resulted in it being received one day late by the Michigan Supreme Court. The application for leave to appeal to the Michigan Supreme Court was therefore rejected as untimely. *Id.* at 801-02.

In the subsequent habeas action, the district court held that Mohn had demonstrated cause to excuse the procedural default because "the papers were no longer in his control" once he gave them to the prison officials five days prior to the deadline. *Id.* at 802. *Mohn* is obviously not binding precedent, but we fully agree with its result. Maples had completed his application for leave to appeal to the Michigan Supreme Court five days prior to the filing deadline, and he attempted to submit it to the prison officials at that time. Unlike in *Shorter*, he did not have the ability, through counsel, to deliver the papers personally to the state court, and was instead forced to rely on prison officials to do this for

him. The prison officials' inaction, which resulted in the application for leave to appeal being denied because it was filed in an untimely fashion, presents an "objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (internal quotation marks omitted).

This is not to say that the "prison mailbox rule" established by *Houston v. Lack*, 487 U.S. 266 (1988), is binding on the state of Michigan, which it is not. *See, e.g., Adams v. LeMaster*, 223 F.3d 1177, 1183 (10th Cir. 2000) (noting that "the *Houston* decision is not binding on state courts"). Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events, however, the rule is sufficient to excuse a procedural default based upon a late filing. If the prison had accepted and mailed Maples's petition when he first attempted to deliver it—five days before the state's deadline—we have no doubt that it would have been timely delivered in the normal course of events. Maples has therefore shown cause to excuse his procedural default.

The prejudice resulting from the procedural default is that the Michigan Supreme Court refused to consider Maples's claim of ineffective assistance of counsel. Moreover, as the state admits, Maples "no longer has any procedure available to present his claim to the Michigan Supreme Court." The state does not contest that the procedural default prejudiced Maples. We thus will turn to the merits of Maples's claim. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (recognizing that a federal court should assess the merits of a state habeas petitioner's procedurally defaulted claim when the petitioner has demonstrated cause and prejudice that excuses the default).

### 2. *The merits of Maples's ineffective-assistance-of-counsel claim*

Maples's trial counsel provided legal advice that, as the Michigan Court of Appeals held, was patently erroneous. Contrary to his counsel's representation, Maples's guilty plea precluded him from appealing his speedy-trial claim. Such advice certainly falls below an "objective standard of reasonableness" and cannot possibly be considered "sound trial strategy."

Furthermore, Maples has stated that he would have insisted on proceeding to trial, rather than plead guilty, but for his counsel's erroneous advice. The state has not challenged Maples's assertion, thus removing this factor as a contested issue in this case. On the surface, at least, this satisfies the prejudice standard as articulated in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), which applied *Strickland* to instances where the defendant pleads guilty. The Court in *Hill* stated that in order to establish prejudice "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill* goes on to state, however, that "[i]n many guilty plea cases . . . the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* There are two plausible interpretations of the preceding quotation. One reading of *Hill* is that a court should sometimes, but not always, analyze the merits of the underlying claim (e.g., whether there was in fact a speedy-trial violation) in order to assess whether the petitioner suffered prejudice. S*ee id.* (stating that a substantive inquiry should occur "[i]n many guilty plea cases," implying that such an inquiry is not necessary in all such cases). A second interpretation of *Hill* is that the court must always analyze the substance of the petitioner's underlying claim, and that this inquiry will be dispositive to

the resolution of the habeas action "in many guilty plea cases."

We believe that the second interpretation of *Hill* is preferable for two reasons. First, it is more in line with this court's analysis of an ineffective-assistance-of-counsel claim under *Strickland*, which inevitably engages in a substantive inquiry into the petitioner's claims. *E.g., Carter v. Bell*, 218 F.3d 581, 597-600 (6th Cir. 2000) (holding that the habeas petitioner had demonstrated prejudice stemming from his counsel's ineffective assistance after analyzing the merits of petitioner's underlying claim). Second, *Hill*, like the case before us, involved a situation where the petitioner's ineffective-assistance-of-counsel claim stemmed from trial counsel's affirmative misrepresentation to the defendant who subsequently pled guilty. *Id.* at 54 (describing how petitioner's counsel misrepresented the amount of time that the petitioner would be required to serve in prison before he was eligible for parole).

We acknowledge that the Supreme Court in *Hill* did not itself inquire into the substance of the petitioner's claim, but this was only because Hill did not clear the first hurdle of stating that he would have proceeded to trial but for his counsel's errors. *Id.* at 60 ("Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial."). Presumably, the Court in *Hill* discussed the importance of inquiring into the merits of a petitioner's underlying claim because it intended for lower courts to conduct such an analysis where, as here, the petitioner's counsel made an affirmative misrepresentation upon which the petitioner reasonably relied in deciding to plead guilty.

Because we adopt this interpretation of *Hill*, we must remand this action to the district court to assess whether Maples's speedy-trial rights were in fact violated. The

substance of the speedy-trial issue has neither been addressed by any court nor briefed for this appeal.

### III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and **REMAND** the case with directions that the court assess the merits of Maples's speedy-trial argument as part of his ineffective-assistance-of-counsel claim.

---

## CONCURRING IN PART, DISSENTING IN PART

---

BOGGS, Circuit Judge, concurring in part and dissenting in part. Michigan has adopted a 56-day rule for application to its Supreme Court for leave to appeal from a decision of the court of appeals. As far as any precedent in any federal court holds, Michigan would be free to set this limit as 46 days or 66 days or 36 days.

Given this leeway, and given the court's holding that Michigan is not obliged to adopt the federal "prison mail box rule", I do not see how the failure by Maples to file on time is from a cause "external to the petitioner." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

There is no indication that Maples was prevented from submitting his petition to prison authorities in sufficient time that the normal course of the mails (with some leeway for safety) would have delivered it to the Michigan Supreme Court on time. The fact that Maples says he delayed because he did not know the postage amount is unpersuasive. He could have ascertained that amount at a much earlier time. Indeed, there is no indication that knowledge of the exact amount was a prerequisite for submitting his document to the prison authorities for mailing; for all that appears, the proper amount, whatever it was, would have been deducted from his prison account.

Under these circumstances, to hold that petitioner's failure is from a reason "external" to him is no more persuasive then saying that the 56-day limit was too stringent.

I therefore respectfully dissent from the court's holding that petitioner's claim was not procedurally defaulted. To the extent that the court surmounts this hurdle, I agree with the remainder of its decision.