*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID A. MAPLES,

Plaintiff-Appellant,

v

STATE OF MICHIGAN,

Defendant-Appellee.

FOR PUBLICATION
July 21, 2022
9:15 a.m.

No. 343394
Court of Claims
LC No. 17-000135-MZ

ON REMAND

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

CAMERON, J.

This matter returns to this Court on remand from our Supreme Court. We once again affirm the Court of Claims' decision to grant summary disposition in favor of defendant, the State of Michigan, under MCR 2.116(C)(10) (no genuine issue of material fact).

## I. BACKGROUND

David A. Maples filed a claim for compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.*, after his plea-based conviction and sentence were vacated. The relevant facts were outlined in detail in this Court's previous opinion:

In August 1993, Maples, Lawrence Roberts, and James Murphy were arrested and charged with delivery of cocaine and conspiracy to deliver cocaine. The charges arose from a drug transaction that occurred when Maples and Roberts met Murphy at a bar. While at the bar, apparently unbeknownst to Maples and Roberts, Murphy sold cocaine to an undercover police officer. When Maples and Roberts left the bar together, they were pulled over and arrested. The charges against Roberts were eventually dismissed.

Shortly after his arrest, Murphy wrote a letter to the trial court, explaining that Maples and Roberts had nothing to do with the cocaine sale. Murphy reiterated Maples's innocence during a February 1994 hearing on Murphy's entrapment

motion; Maples joined the motion. During the hearing, Murphy testified that Maples was neither involved in nor aware of the cocaine sale.

Maples was not scheduled for trial until September 1995. After being unsuccessful in his attempt to have his case dismissed for entrapment and later to have the case dismissed for a speedy-trial violation, Maples expressed his intent to call Murphy as a defense witness in Maples's trial. However, on the eve of trial, Maples learned that Murphy had accepted a plea offer from the prosecution that awarded him a reduced sentence in exchange for agreeing not to testify on Maples's behalf. Further, Maples's only other witness, Roberts, could not be located for trial. Maples then pleaded guilty to delivery of cocaine because he did not have any exculpatory witnesses available and his attorney assured him that he could still appeal the speedy-trial issue. After Maples was sentenced to 10 to 20 years' imprisonment, Murphy executed affidavits in 1997 and 2007 in which he attested that Maples was never involved in the crimes alleged. Murphy's affidavits were consistent with his testimony from the February 1994 entrapment hearing.

Thereafter, Maples appealed the denial of his motion to dismiss for a speedy-trial violation. A panel of this Court concluded that Maples had waived review of that claim and others when he pleaded guilty. The Michigan Supreme Court denied leave to appeal. *People v Maples*, 459 Mich 867 (1998).

Maples then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, raising issues of ineffective assistance of counsel and the denial of his right to a speedy trial. The district court denied his petition, but it did not explicitly rule on Maples's ineffective-assistance-of-counsel claim. *Maples v Stegall (Maples I)*, 340 F3d 433, 436 (CA 6, 2003) (discussing the federal district court's holding). On appeal, the United States Court of Appeals for the Sixth Circuit held that trial counsel's performance was constitutionally deficient because counsel's advice to Maples—that he could pursue a speedy-trial claim at the appellate level despite the unconditional guilty plea—was "patently erroneous." *Id*. at 439. However, the Sixth Circuit remanded the case back to the federal district court to analyze Maples's likelihood of success on his speedy-trial violation claim in order to determine if there was the requisite prejudice to substantiate an ineffective-assistance-of-counsel claim. *Id*. at 440-441.

On remand, the federal district court concluded that Maples's speedy-trial claim had no merit and, thus, that he could not succeed on his ineffective-assistance-of-counsel claim. See *Maples v Stegall (Maples II)*, 427 F3d 1020, 1023 (CA 6, 2005) (discussing the federal district court's holding). However, the Sixth Circuit concluded, *inter alia*, that although evidence that Roberts would have provided beneficial testimony was weak, evidence to the contrary was weaker, and that had Roberts been available for trial, he would have testified on Maples's behalf. *Id*. at 1032-1033. Thus, because Roberts could no longer be located by the time of trial, Maples was prejudiced by the delay. *Id*. at 1033. The Sixth Circuit also determined that Murphy's unavailability to testify because of his plea agreement prejudiced Maples. *Id*. at 1034. The Sixth Circuit noted that Murphy had given

-2-

testimony that favored Maples at the entrapment hearing in February 1994. *Id*. Because both Roberts and Murphy would have testified favorably for Maples, but both were unavailable by the time of trial, the *Maples II* court concluded that Maples had suffered actual prejudice from the delay. *Id*. Given that conclusion, the Sixth Circuit held that Maples's speedy-trial violation claim had merit, which meant that he had suffered a violation of his right to the effective assistance of counsel. *Id*. Accordingly, the *Maples II* court reversed the federal district court's decision and remanded the case with directions to issue a writ of habeas corpus. *Id*.

After the federal district court issued the writ of habeas corpus, the state criminal court dismissed Maples's criminal charges and vacated his conviction in 2006. Approximately 11 years later, Maples filed his WICA complaint in the Court of Claims.

Maples maintained that he met the WICA requirements for compensation. Specifically, he claimed that new evidence, in the form of Murphy's testimony, affidavits, and letter, as well as Roberts's proposed testimony, demonstrated Maples's innocence and had resulted in the reversal of his conviction and dismissal of the charges against him. The Court of Claims noted that the WICA defined "new evidence" to include evidence that was not presented at "the proceedings leading to plaintiff's conviction," MCL 691.1752(b), that Maples had joined in Murphy's entrapment motion, and that Murphy had testified at the entrapment hearing that Maples had no knowledge of the cocaine sale and did not participate in it. Concluding that the entrapment hearing was a pretrial hearing that led to Maples's conviction and that Murphy's testimony at the entrapment hearing was the same evidence that Maples was now attempting to use to support his WICA claim, the Court of Claims determined that by definition, it was not "new evidence" under the WICA. Further, the court concluded that counsel's constitutionally deficient performance and Maples's speedy-trial claim resulted in his release, not the evidence of Maples's innocence. [*Maples v Michigan*, 328 Mich App 209, 213-217; 936 NW2d 857 (2019) (*Maples III*), rev'd 507 Mich 461 (2021) (Docket No. 160740) (citations omitted).]

Maples appealed the Court of Claims' decision to grant summary disposition in favor of the State of Michigan. This Court affirmed, concluding that "[t]he exculpatory material made part of the entrapment hearing cannot now be considered 'new evidence.' " *Maples III*, 328 Mich App at 220. This Court reasoned that "Maples's entrapment defense certainly was part of the criminal case that brought about his ultimate conviction, and therefore, the pretrial entrapment hearing was a 'proceeding leading to plaintiff's conviction.' " *Id*. at 221. Because Maples sought "to admit the same testimony that was presented during a proceeding leading to his conviction," this Court concluded that Murphy's testimony, affidavits and letter were not "new evidence" under the WICA. *Id*. Additionally, because Maples had failed to provide evidence regarding the substance of Roberts's "supposed testimony," this Court concluded "that Roberts's supposed testimony was not 'new evidence.' " *Id*. at 222.

After granting leave to appeal, a majority of our Supreme Court held that Maples had presented "new evidence under the WICA because [Murphy's evidence] was not presented to a

trier of fact during a proceeding that determined guilt—a trial or a plea hearing." *Maples v Michigan*, 507 Mich 461, 465; 968 NW2d 446 (2021) (*Maples IV*). On that basis, the Supreme Court reversed this Court's opinion in *Maples III* and remanded "for further proceedings." *Id*. at 465, 478.

For purposes of this remand, this Court must decide whether the Court of Claims erred when it concluded that Maples failed to demonstrate that the "new evidence" provided by Murphy actually resulted in Maples's conviction and sentence being vacated and his charges being dismissed, as required by the WICA. Because Maples cannot demonstrate this, we affirm.

## II. STANDARDS OF REVIEW

"We review the interpretation of the WICA de novo." *Maples IV*, 507 Mich at 461.

> The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute. The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent. When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written. [*Sanford v Michigan*, 506 Mich 10, 14-15; 954 NW2d 82 (2020) (quotation marks and citations omitted).]

We also review de novo issues of law, *Albitus v Greektown Casino, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 356188); slip op at 3, and a trial court's decision on a motion for summary disposition, *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. at 160 (quotation marks, citations, and emphasis omitted).]

## III. ANALYSIS

We conclude that summary disposition was proper because there was not a genuine issue of material fact as to whether the "new evidence" resulted in Maples's conviction and sentence being vacated and his charges being dismissed.

"The WICA waives sovereign immunity and creates a cause of action for certain people wrongfully imprisoned by the state of Michigan." *Sanford*, 506 Mich at 13. In construing the Act,

> we must keep in mind that the WICA does not broadly direct courts to make those who were wrongfully imprisoned whole. Indeed, no amount of compensation could sufficiently remedy the deprivation of liberty suffered by those entitled to compensation under the WICA. But, as a matter of public policy, the Legislature

has waived its sovereign immunity to provide a defined class of wrongfully imprisoned people a path to limited compensation. It is the exclusive province of the Legislature to define when and to what extent the state of Michigan relinquishes its sovereign immunity. [*Id*. at 17.]

The principal statutory provision at issue in this case is § 5(1) of the WICA, MCL 691.1755(1), which provides:

> In an action under this act, the plaintiff is entitled to judgment in the plaintiff's favor if the plaintiff proves all of the following by clear and convincing evidence:
>
> (a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.
>
> (b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. . . .
>
> (c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.

This case concerns our interpretation of paragraph (c). Specifically, we question whether Maples demonstrated that the "new evidence"—Murphy's testimony attesting Maples's innocence—"result[ed] in" Maples's conviction being vacated and his charges being dismissed. The only relevant evidence concerning this issue is Murphy's testimony regarding Maples's innocence. In other words, the "new evidence" for purposes of Maples's WICA claim was Murphy's testimony. Our Legislature did not define the phrase "results in" for purposes of the WICA. Therefore, it is proper for us to consult a dictionary for guidance. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).

*Merriam-Webster's Collegiate Dictionary* (11th ed) defines "result" as "something that results as a consequence[.]" "Result" is defined by *Random House Webster's College Dictionary* (1997) as: "1. to arise or proceed as a consequence of actions, premises, etc.; be the outcome. 2. to end in a specified manner or thing." Our Supreme Court similarly defined the word "result" in *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000) ("To occur or exist as a consequence of a particular cause[;] To end in a particular way [;] The consequence of a particular action, operation or course; outcome.") (Quotation marks and citation omitted.)

In deciding whether the vacatur of Maples's conviction and sentence was "a consequence" of the "new evidence," we find it helpful to consult caselaw that has interpreted the word "result," albeit in a different context. In *People v Wood*, 276 Mich App 669, 670; 741 NW2d 574 (2007), the defendant was convicted of fleeing and eluding, MCL 257.602a, after the defendant attempted to elude the police by driving at a high rate of speed following an attempted traffic stop. The

police vehicle that was pursuing the defendant "spun out of control and hit a tree" "[w]hile attempting to navigate an S-curve," and one of the police officers who was in the vehicle died. *Id*. The defendant argued on appeal that there was insufficient evidence to support his conviction because the officer's death resulted from "the officer's loss of control of his own vehicle during the pursuit," not from the defendant's actions. *Id*. at 671.

The *Wood* Court first consulted the *Random House Webster's College Dictionary* (1997) to define "result" and then noted the dictionary definition of "result" outlined in *Robinson*. *Id*. at 671-672. After doing so, the *Wood* Court reasoned that the Legislature's use of the phrase "results in," as opposed to "causes," in the fleeing and eluding statute establishes that "[t]he only causation required by the statutory language is factual causation. . . ." *Id*. at 676. The *Wood* Court then indicated that the relevant inquiry was whether "but for [the] defendant's fleeing and eluding, would the officer's death have occurred?" *Id*. The *Wood* Court concluded that the evidence established that "the officer's death would not have occurred absent [the] defendant's fleeing and eluding, i.e., the police officer would not have lost control of his vehicle during the pursuit of the fleeing defendant[.]" *Id*. Because factual causation existed, the *Wood* Court upheld the defendant's conviction. *Id*.

Like the Court in *Wood*, we conclude that the phrase "results in" requires factual causation under the WICA. Put differently, new evidence results in the vacatur of a conviction when the new evidence is the "but for" cause of the vacatur. In making this analysis, courts should ask: "Would the conviction have been overturned, 'but for' the new evidence?"

Having defined the analytical process, we turn to whether the new evidence provided by Murphy was the factual, or but for, cause of the dismissal of Maples's conviction. This examination requires a close reading of *Maples I* and *II*.

Maples's conviction was vacated because the U.S. Court of Appeals for the Sixth Circuit concluded that Maples was deprived of effective assistance of counsel. Specifically, the *Maples I* court concluded that trial counsel provided deficient advice when he erroneously advised Maples that his guilty plea would not preclude him from appealing his speedy-trial claim. *Maples I*, 340 F3d at 439. The *Maples I* court also concluded that Maples had "on the surface" satisfied that he was prejudiced by his trial counsel's erroneous advice because Maples had asserted that he would not have pleaded guilty had he known that he could not appeal his Sixth Amendment speedy-trial claim. *Id.* at 439-440. The *Maples I* court remanded the issue of prejudice to the federal district court to decide one issue: whether, as part of Maples's ineffective-assistance-of-counsel claim, his waived speedy-trial claim had merit. *Id*. at 440-441. After remand, the *Maples II* court concluded that Maples was prejudiced because his speedy-trial claim had merit. *Maples II*, 427 F3d at 1033-1034. The *Maples II* court considered Murphy's new evidence within the speedy-trial context. *Id*. at 1034.

Claims of violation of the right to a speedy trial are evaluated on the basis of four factors (the "*Barker* factors"): (1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972). None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id*. at 533. Instead, these are

"related factors and must be considered together with such other circumstances as may be relevant." *Id*.

Regarding prejudice, the fourth factor, there are two types—actual or presumptive. At issue in this case is actual prejudice.[1] Courts are directed to consider three interests when considering whether a defendant suffered actual prejudice (the "prejudice interests"). *Id*. at 532. These include: (1) whether the defendant was subject to "oppressive pretrial incarceration," (2) the amount of "anxiety and concern" suffered by the defendant, and (3) the possibility the defense was impaired. *Id*. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Id*.

The *Maples II* court concluded that all of the *Barker* factors weighed in favor of Maples. *Maples II*, 427 F3d at 1034. Regarding the first *Barker* factor, length of the delay, the court noted this factor was not at issue because "[t]he Respondent does not dispute that this period [of the delay] meets the 'uncommonly long' standard." *Id*. at 1026. With respect to the second *Barker* factor, the court stated: "While [Maples] may be held responsible for some minimal part of the nine-month period before July 1994, when the twenty-five months are considered as a whole, the reason-for-delay factor tips strongly in [Maples's] favor." *Id*. at 1029. The court further found the third *Barker* factor—assertion of the right to speedy trial—weighed "strongly" in Maples's favor, "given how vigorously [Maples] asserted his right [to speedy trial] over the course of months from April 1994 to September 1995 . . . ." *Id*. at 1030.

After establishing the first three *Barker* factors favored Maples, the *Maples II* court considered *Barker's* fourth factor, whether Maples suffered prejudice from the delay. *Id*. The *Maples II* court clarified two circumstances to support its conclusion that Maples was indeed prejudiced by the delay. The first circumstance was Maples's inability to contact Roberts in advance of his trial. Although the *Maples II* court concluded Maples had not presented the "strongest evidence" showing Roberts would have appeared to testify on his behalf, the court nonetheless concluded Maples suffered prejudice in this regard. *Id*. at 1033.

The second circumstance the *Maples II* court considered under the *Barker* prejudice factor was Murphy's exculpatory evidence. *Id*. at 1033-1034. The court concluded that the delay rendered Murphy unavailable to testify on behalf of Maples at his trial. *Id*. "Murphy was unavailable because his plea agreement required that he not testify on behalf of Maples[.]" *Id*. at 1033. The *Maples II* court noted that Murphy "gave testimony that favored [Maples] . . . on

---

[1] Generally, in Michigan, prejudice is presumed when a delay is greater than 18 months. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). And, courts need only consider whether a defendant suffered actual prejudice when the delay is less than this time. *People v Collins*, 388 Mich 680, 695; 202 NW2d 769 (1972). Though the *Maples II* court determined Maples endured "a delay of 25 months, 22-24 months of which can be attributed to the state," the court specifically declined to consider whether presumptive prejudice was present in this case. *Maples II*, 427 F3d at 1031.

February 24, 1994"[2] and that Maples "was prepared to go to trial long before co-defendant Murphy entered a plea—and plea negotiations—prohibiting him from testifying on behalf of Maples." *Id*. at 1034. The *Maples II* court ultimately concluded that the prejudice interests favored Maples and therefore, Maples was prejudiced by the delay. *Id*.

In resolving whether Murphy's testimony "resulted in" the vacatur of Maples's conviction and sentence, we emphasize the minor role Murphy's testimony played in relation to the overall speedy-trial analysis. Murphy's testimony was only one of two considerations the *Maples II* court made with respect to the third prejudice interest, that is whether Maples's defense was impaired by the delay. *Id*. at 1033-1034. Impairment to the defense is one of three considerations in determining whether a defendant suffered prejudice from a delay.[3] *Barker*, 407 US at 532. And, prejudice is one of the four *Barker* factors courts must examine when determining whether a defendant's speedy-trial rights were violated. *Id*. at 530. And further stretching the causal connection, the *Barker* factors are subject to a balancing test and no *Barker* factor is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 US at 533. Thus, Murphy's testimony was merely a consideration supporting a factor within another factor that the *Maples II* court balanced with the remaining *Barker* factors to ultimately conclude that Maples's speedy-trial claim was meritorious.

Therefore, we ask ourselves whether, "but for" the small contribution of Murphy's testimony, would Maples's conviction have been vacated? Considering Maples's considerable evidentiary burden, we conclude Murphy's testimony was *not* the but-for cause of the vacatur. Again, an individual must prove by "clear and convincing evidence" they are entitled to WICA relief. MCL 691.1755(1). Clear and convincing evidence is "evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Kefgen v Davidson*, 241 Mich App 611, 625; 617 NW2d 351 (2000) (citation omitted). In this case, Maples does not present "evidence so clear, direct and weighty" demonstrating Murphy's testimony "resulted in" the vacatur of his conviction. The emphatic way the *Maples II* court explained Maples's satisfaction of the first three *Barker* factors, coupled with the relatively small role Murphy's testimony played in the speedy-trial analysis, further supports our conclusion that Maples has failed to show clear and convincing evidence that Murphy's testimony was the but-for cause of the vacatur. Therefore, Murphy's testimony did not "result in" the dismissal of charges against Maples.

Moreover, even if we were to follow Maples's lead and read *Maples II* more broadly with respect to Murphy's testimony, we still would not be able to conclude that the loss of that testimony is what resulted in Maples's habeas relief. The court did, indeed, declare at one point, "It is undisputed that Murphy's unavailability hurt [Maples], as Murphy's testimony would have absolved [Maples] of any guilt." *Maples II*, 427 F3d at 1033. (We read into this latter statement the phrase, "if credited by the fact-finder," as it is clear that the Sixth Circuit was not passing on the credibility and sufficiency of the Murphy evidence in terms of actual innocence.). Thus, it is

---

[2] Trial was originally scheduled to commence in October 1993. *Maples II*, 427 F3d at 1023.

[3] We acknowledge *Barker's* recognition that this is "the most serious" of the prejudice interests. *Barker*, 407 US at 532.

possible that Murphy's testimony weighed more heavily on the Sixth Circuit than a plain reading of its opinion otherwise suggests.

But, this is nothing more than suspicion built on conjecture. As already explained, the *Maples II* court made clear that other factors weighed heavily in favor of a speedy-trial violation. All but two facts that the *Maples II* court relied on had nothing to do with the guilt or innocence of Maples, and compensating the innocent is the whole point of the WICA. This highlights the inherent difficulty with isolating a decisive fact or circumstance under an open-ended, weigh-the-factors balancing test like the one from *Barker*. Unless a court makes clear as part of its analysis that, within the array of relevant facts and circumstances, one particular fact or circumstance was critical or decisive, it will be conceptually difficult, if not impossible, to identify but-for causation in this type of situation. Such is the case here. In the final analysis, there is simply no principled way to conclude that, by clear and convincing evidence, the Sixth Circuit's grant of habeas relief was a result of Murphy's testimony.

Additionally, Maples cannot establish that the "new evidence resulted in either the dismissal of the charges or in an acquittal of all the charges on retrial." See *Maples IV*, 507 Mich at 468. While the dismissal of criminal charges is the remedy for a speedy-trial violation, *Strunk v United States*, 412 US 434, 434; 93 S Ct 2260; 37 L Ed 2d 56 (1973), for the reasons already discussed, it cannot be said that but for the "new evidence" Maples's speedy-trial claim would have failed. Summary disposition in favor of the State of Michigan was proper.

Affirmed.

/s/ Thomas C. Cameron
/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh