NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0134n.06

No. 08-1914

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 03, 2010**
LEONARD GREEN, Clerk

ANDRE CALWISE,

    Petitioner-Appellant,

v.

CINDI CURTIN, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

Before: MERRITT, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge. Andre Calwise appeals the district court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2254, alleging that the prosecution withheld evidence in violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Finding no "reasonable probability that the suppressed evidence would have produced a different verdict," we affirm. *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

I.

A jury convicted Calwise of first-degree felony murder and possession of a firearm during the commission of a felony. Calwise's conviction arose from the shooting death of Herbert Thomas at a Detroit gas station. The gas station security camera recorded the murder.

Over the course of several months preceding trial, the prosecution failed to comply with defense counsel's repeated requests to view the convenience store tape. Finally, a few days before trial, the prosecution showed the tape to counsel; but when defense counsel viewed the tape,"[t]here was nothing on it." The trial transcript reflects considerable confusion regarding the tape's condition. At a sidebar prompted by a prosecution witness's mention of the tape, the prosecutor informed the court that the videotape could not be viewed due to a problem with the prosecution office's equipment. Neither the defense nor the jury watched the tape.

Although the jury did not view the crime-scene videotape, it heard eyewitness testimony from Etasha Gibbs, Thomas's passenger. According to Gibbs, after arriving at the gas station, Thomas exited the van and walked into the convenience store, where he remained for about five minutes, before returning to pump gasoline. When he finished filling up the tank, Thomas opened up the driver's side door and began to step up into the van. As he did, two men approached the driver's side of the vehicle. One man ordered Thomas out of the van and demanded the rims off of his car; the other man carried a gun. When Thomas began to drive away, Gibbs heard two gunshots, one of which struck Thomas, ultimately killing him. Gibbs identified Calwise as the shooter at a live line-up and testified that she had seen him in her neighborhood before.

In addition to Gibbs's account, the prosecution offered testimony from a series of witnesses and presented four still photographs taken from the gas station's security camera. Lisa White, an employee of the gas station, identified Calwise as one of the persons in the photographs. White

further testified that she received a letter from Calwise approximately three months after the murder in which he admitted coming to the gas station on the night of the shooting, but insisted that he arrived at 10:30 or 10:55 p.m.

The jury heard conflicting testimony regarding the time of the killing. Although Gibbs testified that the killing occurred at approximately 7:45 p.m., an estimation based on her observation of the van's clock, still photographs from the security camera showed the murder taking place at 9:10 p.m. Meanwhile, Officer Dammeon Player testified to being dispatched to the crime scene at about 9:00 p.m. and his belief that the shooting occurred around 8:30 p.m. Defense witness Nick Kashmika, the gas station's owner, testified that the shooting took place around 8:00 p.m. and questioned the accuracy of the timestamp on the videotape.

The jury convicted Calwise of both charges. He then filed motions in the Wayne County Circuit Court requesting a new trial and a *Ginther* hearing.[1] At the evidentiary hearing, the trial court watched the now-viewable convenience store security tape for the first time and granted Calwise a new trial due to the prosecution's failure to provide the defense with a usable copy of the tape. The Michigan Court of Appeals vacated the trial court's grant of a new trial, citing the lower court's lack of jurisdiction to grant such a motion, and affirmed his convictions. *People v. Calwise*, No. 249187, 2005 WL 857367 (Mich. Ct. App. Apr. 14, 2005). Calwise then filed a pro per application for leave

---

[1]A *Ginther* hearing is an evidentiary hearing regarding a claim of ineffective assistance of counsel. *See People v. Ginther*, 212 N.W.2d 922, 924 (Mich. 1973).

to appeal with the Michigan Supreme Court. After the state supreme court denied his application, *People v. Calwise*, 706 N.W.2d 17 (Mich. 2005) (table), Calwise filed this pro se petition in district court. The district court denied habeas relief, but we granted a certificate of appealability to consider Calwise's *Brady* claim.

## II.

We review de novo the district court's decision denying habeas relief. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may not grant a writ of habeas corpus unless the state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)–(2). AEDPA confines our inquiry to claims adjudicated on the merits. *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006). Thus, when the state court fails to address the merits of a claim, AEDPA deference does not apply. *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003).

Calwise contends that the state violated *Brady* by failing to turn over the convenience store videotape. *Brady* obligates the prosecution to furnish "material that is both favorable to the defendant and material to guilt or punishment." *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994). A successful *Brady* claim includes three elements: (1) the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must

have been suppressed by the State, either willfully or inadvertently"; and (3) the evidence must be material, meaning "prejudice must have ensued." *Strickler*, 527 U.S. at 281–82. We deem evidence material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The Michigan Court of Appeals held that, even assuming that "the prosecution acted deficiently in failing to produce a viewable and usable videotape," any error was harmless under state law. *Calwise*, 2005 WL 857367, at *2. We note that *Brady*'s materiality requirement obviates the need for harmless-error review, *Kyles v. Whitley*, 514 U.S. 419, 435 (1995), and, applying de novo review, find that Calwise fails to meet this more demanding requirement. First, contrary to Calwise's contention, the security-camera videotape is not exculpatory. Not only does the tape fail to implicate another person as the shooter, it confirms Calwise's presence at the gas station approximately three minutes before the shooting. Moreover, as the state appellate court noted, to the extent Calwise could have used the tape to impeach Gibbs's testimony, the tape's value was "minimal." *Calwise*, 2005 WL 857367, at *3. Although the tape contradicted collateral matters such as who entered and exited the convenience store and when those movements occurred, that video evidence would not have changed the outcome of the trial. Gibbs had an unobstructed view of the perpetrators and selected Calwise out of a lineup. In fact, even without the video evidence, defense counsel impeached Gibbs's testimony by, for example, presenting still photographs of the tape

revealing a time stamp of 9:10 p.m., which conflicted with Gibbs's estimated time of 7:45 p.m. The videotape may have "furnishe[d] an additional basis on which to challenge [Gibbs]," but such cumulative evidence is not material. *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000) (internal quotation marks and citation omitted). Because Calwise failed to show a reasonable probability that the suppressed videotape would have produced a different outcome, we affirm the judgment of the district court.