NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0642n.06

No. 11-3598

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 18, 2012**

LEONARD GREEN, Clerk

NATHANIEL ALEXANDER,                    )
                                        )
    Petitioner-Appellant,               )
                                        )
v.                                      )   ON APPEAL FROM THE
                                        )   UNITED STATES DISTRICT
WARDEN, ROSS CORRECTIONAL               )   COURT FOR THE SOUTHERN
 INSTITUTION                            )   DISTRICT OF OHIO
                                        )
    Respondent-Appellee.                )

Before:     **KEITH, McKEAGUE, and DONALD, Circuit Judges.**

**PER CURIAM**. Petitioner Nathaniel Alexander appeals the denial of his petition for a writ of habeas corpus. Alexander claims that the State of Ohio deprived him of his Sixth Amendment right to a speedy trial. Because we find that the Ohio courts' application of clearly established federal law was not unreasonable, we AFFIRM.

On July 16, 2003, the State of Ohio filed a complaint against Nathaniel Alexander in the Portsmouth Municipal Court charging him with one count of murder for the shooting death of Jordon Payton at an apartment party in Portsmouth, Ohio. Alexander was arrested on this charge on August 11, 2003, and then released the same day on a $50,000 surety bond. As his case was bound over to the Scioto County grand jury, the trial court continued Alexander's $50,000 bond for his appearance at trial upon an indictment by the grand jury. On November 19, 2003, the grand jury returned a "no bill" in Alexander's case, reporting to the trial court that it failed to return an indictment. The court discharged the grand jury upon receiving the report.

On August 26, 2005, a new Scioto County grand jury returned an indictment against Alexander. The grand jury charged Alexander with one count of aggravated murder along with a firearm specification based on the same facts as the initial murder charge. Alexander was arrested on November 9, 2006, in Franklin County, Ohio, and held on the warrant and two probation violations. Shortly thereafter, the Franklin County Common Pleas Court ordered Alexander to be held without bond and instructed Scioto County officials to transport him to Scioto County within five days. Despite the instruction by the Franklin County Common Pleas Court, Alexander was not transported to Scioto County until March 2, 2007, when he was arraigned on his murder charge.

An initial trial date was set for June 4, 2007, but the court continued the trial because the State had not provided the defense with discovery. Another trial date was scheduled for August 6, 2007. Alexander filed a motion to dismiss on July 26, 2007, arguing that the State had violated his right to a speedy trial. The court denied the motion on November 7, 2007, and made the following findings:

> [O]n November 19, 2003 the Scioto County Grand Jury returned a "no bill" in case number 03-CR-1806. The defendant was indicted in this case on August 26, 2005 and arraigned on March 2, 2007.
> [T]here was no charge pending against the defendant from November 19, 2003 through August 26, 2005 and the State of Ohio is not charged with this time pursuant to O.R.C. 2945.71.
> [T]he defendant's motion as it pertains to the delay from August 26, 2005 until arraignment on March 2, 2007 is not well taken in that the defendant had felony charges pending in another jurisdiction and was a fugitive avoiding apprehension.

Alexander's trial commenced February 6, 2008. On February 8, 2008, following a jury trial, Alexander was convicted of the lesser-included offense of murder with a firearm specification. On February 14, 2008, the trial court held an evidentiary hearing to supplement the record with

additional testimony in support of Alexander's motion to dismiss "for lack of speedy trial." Alexander called Detective James Charles, who testified about a comment he made to a witness in 2006 regarding the 2003 grand jury. Detective Charles told the witness that although he thought there would be enough evidence to indict in 2003, the prosecutor would not let the grand jury vote based on concerns about subpoenaed witnesses who failed to appear before the grand jury to testify. On cross-examination, the prosecutor presented Detective Charles with a copy of the November 19, 2003 grand jury report indicating that the grand jury returned a "no bill." After reviewing the report, Detective Charles admitted that his assumption about the 2003 grand jury was incorrect. At the close the hearing, the trial court reaffirmed its denial of Alexander's motion to dismiss.

Alexander filed a timely appeal to the Ohio Court of Appeals, claiming, inter alia, that he was denied his right to a speedy trial in violation of the Sixth Amendment of the United States Constitution and O.R.C. § 2945.71. The Ohio Court of Appeals affirmed the judgment of the trial court on March 24, 2009. The Ohio Supreme Court denied leave to appeal and summarily dismissed the appeal as not involving any substantial constitutional question.

Alexander filed the instant 28 U.S.C. § 2254 petition for a writ of habeas corpus in United States District Court for the Southern District of Ohio, again claiming that his right to a speedy trial had been violated during his state court proceedings. On May 9, 2011, the district court issued an order adopting the magistrate judge's report and recommendation denying Alexander's petition.

We review de novo a district court's denial of a writ of habeas corpus. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001). Pursuant

to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the petitioner is entitled to

relief only if a claim adjudicated on the merits in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Alexander's federal claim was adjudicated on the merits by the Ohio state

court. Accordingly, Alexander is entitled to relief only if the Ohio Court of Appeals decision was

contrary to or involved an unreasonable application of clearly established federal law, or was based

on an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding. For the purposes of habeas corpus review, "clearly established federal law" denotes a

legal principle that is embodied in a holding of the Supreme Court. *Thaler v. Haynes*, ___U.S. ___,

130 S.Ct. 1171, 1173 (2010). A state court reached a decision "contrary to" clearly established

federal law if that court (1) applied a rule different from the governing law, or (2) decided a case

differently despite materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A

decision is based on an unreasonable application of clearly established law if the state court correctly

identified the governing law but unreasonably applied it to the facts of a particular case. *Id.*

AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems,

not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770,

786 (2011) (citation and internal quotation marks omitted). "As a condition for obtaining habeas

corpus from a federal court, a state prisoner must show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. In evaluating a Sixth Amendment speedy-trial claim, courts must consider the following four factors: (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

Alexander argues that he was subjected to a delay of four and a half years. He contends that because the state took no affirmative steps to dismiss his 2003 case after the jury returned the no bill, his 2003 charges were "actually pending continuously" until his trial date. He further argues that the time period between November 19, 2003—the date that the jury returned a no bill—and August 26, 2005—the date that the Scioto County grand jury returned an indictment—should be counted towards the total time of his delay. The Ohio Court of Appeals expressly rejected this argument on state law grounds, determining that the 2003 case against Alexander terminated by operation of law when the grand jury issued a "no bill." The state court concluded:

> While Alexander correctly contends that neither the State nor the trial court filed a dismissal entry for case number 03-CR-653, we conclude the case terminated automatically by operation of law when the common pleas court lost jurisdiction by virtue of the discharge after the "no bill." In other words, while "Case No. 03-CR-653" remained open in the court's docket, it was a legal nullity at that point. And

accordingly, there was no charge "pending" against Alexander for purposes of his speedy trial rights.

Thus, because there was no charge pending as of November 19, 2003, the post-accusation delay was actually about two-and-a-half months.

In analyzing Alexander's federal speedy trial claim, the state appellate court properly relied on the Supreme Court's decisions in *Barker* and *Doggett v. United States*, 505 U.S. 647 (1992), as the governing law. The appellate court conducted a separate analysis of the two-year[1] delay between the time of Alexander's 2003 arrest and his 2005 indictment, and the eighteen-month delay between Alexander's indictment and arraignment.

In analyzing the delay between the 2003 arrest and the 2005 indictment, the court began by considering the length of and the reason for the delay. To trigger a speedy trial analysis, the accused must show that the length of the delay was presumptively prejudicial. *Doggett*, 505 U.S. at 651-52. Generally, a post-accusation delay is presumptively prejudicial as it approaches one year. *Id.* at 652 n.1. When evaluating the reasons for the delay, courts will assign different weights to different reasons. *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

---

[1] Despite finding that Alexander's charges were terminated by operation of law on November 19, 2003, the state appellate court nonetheless analyzed his speedy trial claim as if his actual delay during this time period was two years.

The state appellate court found that because Alexander's delay was two years, it triggered the *Barker* analysis. As to the reason for the delay, the court noted that it occurred in part because witnesses refused to cooperate with the investigation. The appellate court concluded that even if the State did not act as diligently as it should have, the length of the delay did not weigh heavily against the State because, given the circumstances, a two-year delay was not so protracted or intolerable as to warrant relief absent some particularized trial prejudice. The appellate court did not unreasonably reach this conclusion. *Cf. Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

Next, the state appellate court analyzed whether Alexander asserted his right to a speedy trial—the third *Barker* factor. Alexander did not raise his right to a speedy trial until after he was arraigned in 2008. The state court assigned no fault to Alexander for not asserting his speedy trial right during the two-year time period between his 2003 arrest and his 2005 indictment because the grand jury returned a "no bill," in 2003, which divested the trial court of jurisdiction. However, because the court found that several months elapsed between the time he was indicted and the time that he asserted his right to a speedy trial at his arraignment, the court weighed this factor slightly against Alexander.

The final factor that the court considered was the prejudice resulting from the delay. "Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The Supreme Court has identified those interests as (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* The state appellate

court considered these issues and determined that the first interest was not implicated because Alexander was not incarcerated during the time between his initial arrest and his indictment. The second interest had a minimal impact because the grand jury returned a "no bill" less than three months after Alexander's arrest. The court found that Alexander failed even to allege that he suffered post-accusation delay. After balancing these factors, the state appellate court concluded that the two-year delay did not infringe Alexander's right to a speedy trial. We conclude that this was not an unreasonable application of *Barker*.

The state court next conducted a *Barker* analysis for the eighteen-month delay between Alexander's indictment and his arraignment. Alexander was indicted on August 26, 2005, but his arraignment was not until March 2, 2007. The state appellate court attributed part of this delay to Alexander himself. The trial court found that Alexander was a fugitive avoiding apprehension in the time between his indictment and his eventual arrest on November 9, 2006. In analyzing a speedy trial claim, courts attach great weight to justifiable reasons for pretrial delay, including tracking down the accused if they have gone into hiding. *Doggett*, 505 U.S. at 656. Following this legal principle, the state appellate court found that Alexander was more blameworthy than the state in causing the delay between indictment and arrest. However, the court also found that the state was more blameworthy for the four-month delay between Alexander's arrest and his arraignment because the state did not act as diligently as it could have during that time.

In considering the third factor, the state appellate court again pointed out that, although Alexander was arrested in November 2006, he did not assert his right to a speedy trial until after his arraignment in March 2007. Alexander appeared in court four days after his arrest for a hearing

concerning the arrest warrant. Although Alexander had full knowledge of the pending indictment, he did not assert his right to a speedy trial at that time.

Lastly, after considering the three interests that the speedy trial right is designed to protect, the state court held that there was no prejudice in Alexander's case. Alexander did not suffer oppressive pretrial incarceration because he was also incarcerated for probation violations. The state appellate court found that any anxiety and concern suffered by Alexander was minimized by the fact that he did not seek a final disposition of his indictment in this case pursuant to O.R.C. § 2941.401. Moreover, Alexander did not allege or establish that the delay impaired his defense.

After balancing the *Barker* factors, the state appellate court concluded that Alexander also did not suffer a violation of his constitutional right to a speedy trial during the eighteen-month delay between his indictment and his arraignment. We do not find the Ohio appellate court's reasoning or conclusions to be in discord with clearly established law.

Because the state court decision on the merits of Alexander's claim did not result in an unreasonable application of clearly established law, we AFFIRM the judgment of the district court denying Alexander's petition.