NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0540n.06

No. 16-3486

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| REGIS L. DICKERSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| WARDEN, ROSS CORRECTIONAL | ) | SOUTHERN DISTRICT OF |
| INSTITUTION, | ) | OHIO |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE: CLAY and GRIFFIN, Circuit Judges; ZOUHARY, District Judge.*

GRIFFIN, Circuit Judge.

Petitioner Regis Dickerson appeals the district court's judgment denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. A jury convicted Dickerson of two counts of murder under Ohio law. Since then, he has worked his way through several stages of appeals and postconviction review in both state and federal court, raising many different claims along the way. This appeal, however, is limited to a single issue involving procedural default.

In his § 2254 petition, Dickerson sought to excuse the procedural default of several of his claims by alleging ineffective assistance of his appellate counsel on direct appeal. The district court found that this claim was itself procedurally defaulted because Dickerson's attempt to raise it in a prior appeal was rejected by the Ohio Supreme Court as untimely. Dickerson then attempted

_____

*The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

to excuse this second level of default by submitting evidence of his late receipt of the relevant adverse Ohio Court of Appeals decision, arguing that the late notice left him too little time to prepare and file an appeal to the Ohio Supreme Court. The district court found that this delay in receiving notice of the adverse decision did not constitute cause to excuse the default and dismissed the petition.

We granted Dickerson a certificate of appealability ("COA") as to whether the default of his ineffective-assistance claim was excusable given the late receipt of the state appellate court adverse decision. On review, we hold that the late notice does not excuse the default and affirm the district court judgment.

I.

In 2011, a jury convicted Dickerson of two counts of murder with firearm specifications in violation of Ohio Revised Code §§ 2903.02 and 2941.145. Dickerson's direct appeal was unsuccessful. *State v. Dickerson*, No. 11AP–789, 2012 WL 2928667, at *1 (Ohio Ct. App. July 19, 2012), *perm. app. denied*, 978 N.E.2d 910 (Ohio 2012) (Table). Dickerson later moved to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B)(1), which allows "[a] defendant in a criminal case [to] apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." To support his motion, Dickerson argued that he received ineffective assistance of appellate counsel because his attorney failed to argue five issues on direct appeal. The Ohio Court of Appeals denied the motion on the merits.

Dickerson then attempted to appeal that denial to the Ohio Supreme Court. According to a letter from the deputy clerk, he had to file his appeal within forty-five days of the entry of the

intermediate appellate court judgment. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i). But Dickerson's appeal arrived twenty-one days late, so the Ohio Supreme Court rejected it as untimely.

After exhausting his state postconviction options,[1] Dickerson filed a § 2254 petition in the district court, raising fifteen separate claims. *Dickerson v. Warden, Ross Corr. Inst.*, No. 2:15-CV-0068, 2016 WL 1642963, at \*4 (S.D. Ohio Apr. 26, 2016). The district court denied the petition and dismissed the case. *Id.* at \*19. As part of that denial—and as relevant to this appeal—the district court ruled that many of Dickerson's claims were procedurally defaulted because he had not raised them on direct appeal. *Id.* at \*6. Dickerson attempted to excuse the default by alleging ineffective assistance of appellate counsel. *Id.* at \*9 (citing *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003)). But the district court also ruled that Dickerson's ineffective-assistance claim was procedurally defaulted because his appeal to the Ohio Supreme Court of the denial of his Rule 26(B) motion—the motion in which he first raised his ineffective-assistance claim—was late. *Id.* In short, the district court dismissed Dickerson's § 2254 petition after finding a double default: a default of the claims themselves, and a default of his excuse for the first default. At issue in this appeal is the second default.

Dickerson then sought to appeal the denial of his § 2254 petition, but the district court declined to issue a COA. We eventually granted one, but only as to a single issue: "whether Dickerson has shown cause for the procedural default of the Rule 26(B) claims . . . ."

II.

"We review the district court's legal conclusions in habeas proceedings de novo and its findings of fact for clear error." *Braxton v. Gansheimer*, 561 F.3d 453, 457 (6th Cir. 2009). Of the

---

[1]Dickerson filed a petition to vacate or set aside judgment in the state trial court, the denial of which plays no role in this appeal. *See State v. Dickerson*, No. 13AP–249, 2013 WL 5451618, at \*1 (Ohio Ct. App. Sept. 30, 2013), *perm. app. denied*, 3 N.E.3d 1218 (Ohio 2014) (Table).

many legal issues that arise in habeas proceedings, here we deal only with procedural default, which occurs when a petitioner has failed "to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (quoting *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000)).

This appeal concerns the second of two defaults—the default of Dickerson's ineffective-assistance claim, which he sought to assert to excuse the default of his habeas claims. But even "a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of *another* habeas claim." *Edwards*, 529 U.S. 446, 450–51 (2000) (emphasis added). To establish such cause, Dickerson must show that "some objective factor external to the defense" prevented his compliance with the state procedural rule that led to his default. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (internal quotation marks omitted). In other words, Dickerson must show that an objective external factor prevented him from timely appealing the denial of his Rule 26(B) motion to reopen his state direct appeal.

The Supreme Court has not "attempt[ed] an exhaustive catalog of such objective impediments to compliance with a procedural rule," but has noted that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations and internal quotation marks omitted); *see, e.g.*, *Jamison v. Collins*, 291 F.3d 380, 386 (6th Cir. 2002) (prosecution's withholding of *Brady* evidence from the petitioner's attorneys qualified as a "substantial reason for the default that is external to [the petitioner]"). And we have held, where a petitioner demonstrates that "neither he nor his attorney ever received formal notice of the state trial court's order denying his petition,"

he has successfully "established cause to excuse the procedural default resulting from his failure to timely appeal the denial of his postconviction petition." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).

Here, Dickerson concedes that he received notice of the denial of his Rule 26(B) motion but argues that the state court delay in sending him its decision constituted "interference by officials [that] made compliance impracticable." That delay left him with nine days to appeal the denial, which he claims was insufficient time.[2] We must therefore determine whether it was impracticable for Dickerson to file his appeal within that nine-day window.

The Supreme Court has not defined "impracticable" in the habeas context. Black's Law Dictionary offers the following definition:

> A fact or circumstance that excuses a party from performing an act . . . because (although possible) it would cause extreme and unreasonable difficulty. For performance to be truly impracticable, the duty must become much more difficult or much more expensive to perform, and this difficulty or expense must have been unanticipated.

*Black's Law Dictionary* 874 (10th ed. 2014). This definition squares with Dickerson's contention that "impracticable" must "mean[ ] something less than impossible." The Supreme Court's treatment of the two words together also appears to support this distinction. *See F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 247 (1987) ("[I]n most instances underground installation of the necessary cables is impossible or impracticable."); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) ("[I]n most cases it is not only impracticable, but impossible, to provide a meaningful hearing

---

[2]Dickerson also argues that his window for filing a timely appeal was reduced from nine days to seven because "the prison's law library was closed over the weekend on March 23 and 24, 2013." But Dickerson "does not indicate why he required additional time to conduct legal research and how his limited law library time prevented him from filing a timely notice of appeal." *Bonilla*, 370 F.3d at 498. Without that explanation, a time limitation on law library access is insufficient to establish cause to excuse his procedural default.

before the deprivation."), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Yakus v. United States*, 321 U.S. 414, 424 (1944) ("The Constitution as a continuously operative charter of government does not demand the impossible or the impracticable."); *see also Penn Dairies v. Milk Control Comm'n of Pa.*, 318 U.S. 261, 284 (1943) (Douglas, J., dissenting) ("A thing is 'impracticable' to do when it is infeasible or incapable of being done."). Under Black's Law Dictionary's definition, then, Dickerson must demonstrate that the delay in receiving the Ohio Court of Appeals' decision caused "extreme and unreasonable difficulty" that impeded his compliance with the Ohio Supreme Court's filing deadline. He has not done so.

Dickerson states that he "was required to file both a notice of appeal and a memorandum in support of jurisdiction to timely file his appeal to the Ohio Supreme Court." *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a). The latter of these, he contends, "is a complicated legal document requiring an appellant to state why his case involves a substantial constitutional issue or a matter of great concern to the public warranting a review by the Ohio Supreme Court." Ohio Supreme Court Rule of Practice 7.02(C) explains that a memorandum in support of jurisdiction must include a table of contents, a statement of the case and facts, a "thorough explanation of why a substantial constitutional question is involved, why the case is of public or great general interest, or, in a felony case, why leave to appeal should be granted," and a "brief and concise argument in support of each proposition of law." A memorandum of jurisdiction "shall not exceed fifteen numbered pages, exclusive of the table of contents and the certificate of service." Ohio S. Ct. Prac. R. 7.02(B)(1).

Dickerson asserts that it was impracticable for him to draft a notice of appeal and memorandum of jurisdiction and ensure that it reached the Ohio Supreme Court in nine days' time. But he was not working from a blank slate. By the time Dickerson received the denial of his Rule

26(B) motion, he had already filed (1) a direct appeal in the state court of appeals, (2) an appeal of its decision to the state supreme court, including a memorandum of jurisdiction, (3) a postconviction petition in the state trial court, (4) a notice of appeal of that decision to the court of appeals, and (5) a Rule 26(B) motion in the court of appeals. Except for the direct appeal, Dickerson filed all of these documents pro se. While drafting a memorandum of jurisdiction might require a bit more than "regurgitat[ing] the claims that had been made in the briefing below," as Respondent puts it, Dickerson did not have to reinvent the wheel to draft an argument alleging a "substantial constitutional question"; he had plenty of prior work product from which to draw.

Dickerson also notes that "the Ohio Supreme Court has expressly rejected the 'mailbox rule' of *Houston v. Lack*, 487 U.S. 266, 270 (1988)," and instead requires actual receipt of documents before a filing deadline. *Castor v. Warden, Ross Corr. Inst.*, 2017 WL 1353567, *5 (S.D. Ohio, 2017); *see* Ohio S. Ct. Prac. R. 3.02(A)(4). To be sure, this presents special difficulties for prisoners litigating their claims pro se, as many have no access to electronic filing and must rely on prison officials to handle and mail their court documents. But even assuming a four-day delay for mailing, Dickerson still had five full days in which to draft a fairly short memorandum working from an extensive amount of directly relevant work product.

Finally, Dickerson advances a public policy argument, claiming that ruling against him would "open the door for the state to deny prisoners the ability to pursue their constitutional claims in Federal court simply by waiting to send a mailing." Such a bad faith action by a state would indeed be cause for concern. But Dickerson, by his own admission, "does not suggest actual malfeasance on the part of the State in the present matter" and "has no reason to believe the State intentionally delayed mailing him notice of the appellate court's decision in this case." His

concerns are thus not implicated here, so we decline to postulate how we would rule if the facts and record were different.

After close review, we hold that the delay in sending Dickerson a denial of his Rule 26(B) motion did not make filing a timely appeal "impracticable." Accordingly, Dickerson cannot show cause to excuse the procedural default of his ineffective-assistance-of-appellate-counsel claim. Nevertheless, we emphasize that our holding in this case is limited to the facts before us.

III.

For these reasons, we affirm.